IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# EASTERN DIVISION.

KNOXVILLE: - - - SEPTEMBER TERM, 1874.

---

### S. T. BLAIR *et al. v.* ANDREW NELSON *et al.*

VIOLATION OF DECREE. *Punishment for contempt.* A court of equity has the authority to punish, by imprisonment, for violating or disregarding its decrees; and, though the phraseology of the decree violated was inartificial and obscure, it does not excuse the party, if its spirit and intent be manifest and free from doubt.

Case cited: The State *v.* Galloway, 5 Col., 326.

---

#### FROM LOUDON.

---

Appeal from the Chancery Court. O. P. TEMPLE, Chancellor.

BAXTER & SON for complainants.

W. P. WASHBURN for defendants.

SNEED, J., delivered the opinion of the court.

1—VOL. 8.

The defendant, Nelson, appeals from a decree of the Chancery Court at Loudon, by which he was adjudged to suffer imprisonment for four months for a contempt of court in the willful violation, as alleged, of a writ of injunction.

The facts are, that one Feltz had recovered a judgment before a justice, on the 8th of June, 1871, for about $300, against the complainant, S. T. Blair, as secretary of the board of trustees of the Loudon High School, which said judgment the said Feltz had sold and assigned to defendant Nelson on the 20th of said month. The judgment had been stayed by the other complainants in this cause, but during the stay a bill had been filed by Fields, Thayer & Whitcomb, attaching said judgment as the property of Feltz. Upon the expiration of the stay the complainants filed this bill, setting forth the foregoing facts, and praying an injunction against Nelson, Feltz and the officer from further proceeding to collect said judgment until it was determined in said litigation who was the owner of said judgment and to whom it should be paid. An injunction was accordingly issued, tested as of the November term, 1871, enjoining defendants Nelson, Feltz and others, under penalty of contempt, from "issuing or executing any order of sale, execution, attachment, garnishment or other process, or doing or performing any act whatever, for the collection of the said debt or judgment, or proceeding in any way with the said suit or process therein." At the May term, 1872, the injunction was so far modified as to require the complainant Blair to pay said money into court,

Blair *v.* Nelson.

and allowing him three months in which to do so; and the decree then proceeds as follows: "And that upon said A. Nelson executing a refunding bond with approved security to the clerk and master, he be allowed to draw said money out of the office of this court and hold the same until the issue is final. Upon failure of said Blair to pay said money into court within three months, the said Nelson may proceed to collect said money by execution issued from the office of the justice before whom said judgment was recovered; and that the parties be required to interplead in order to ascertain to whom the said fund properly belongs." At the November term following, and on the 18th day of said month, a decree was entered reciting that since the last term the said Nelson had collected said judgment without giving the required bond, and ordering him to pay the money or execute a refunding bond, as required in the preceding decree, before 10 A. M. on the next day (the 19th), or stand in contempt. And on the 20th of said month defendant Nelson presents to the court his affidavit to the effect that he had parted with said money in payment of a debt, and after diligent effort he had failed to get security; that he was not advised of the order of the 18th of November until during the afternoon of the 19th, and disclaiming any voluntary act in contempt of the court. On that day, the 20th of November, 1872, the court continues the matter over until the May term, 1873, and gives Nelson until noon of the first day of said May term to pay said money into court or to execute said bond.

At said May term, 1873, said order not being com-
plied with, an attachment *nisi* was issued.  On the
21st of said month, the physicians of defendant Nel-
son certifying his illness and inability to attend the
court, the matter was continued over until November
term, 1873, when Nelson appeared and made affidavit
of his inability to comply with the order.   He states
in said affidavit that in collecting said money he acted
in good faith, and, as he believed, in strict accord-
ance with the letter and word of the decree author-
izing its collection, and that it is not out of contempt
that he fails to comply with the order, but on ac-
count of his inability to do . so.    The matter was
again continued over until the May term, 1874, and
defendant permitted to give bond for his appearance
at that term to answer the contempt.    At the said
May term, the defendant still failing to pay the money
or execute the bond, he was adjudged to stand in con-
tempt, and to be imprisoned for the period of four
months; and to reverse this decree, he has appealed
to this court.

The question is, was this a proper case for the
exercise of judicial power in the manner stated? The
power to punish for contempt is one of the highest
prerogatives of a court of justice.   Without it, the
citizen litigating his rights in court would be without
protection or security, and upon its bold and prudent
exercise depend the respect, the dignity and efficacy of
courts of justice as arbiters of human rights.    The
mandates of a court must in all cases be obeyed.    If
wrong be done to the citizen by error of judgment,

Blair *v.* Nelson.

there are channels of redress provided by law. If injury be done him from corrupt or malevolent motives by a presiding judge, he is yet not without his remedy. But in all cases the mandates of a court must be obeyed according to the spirit of the judicial order or decree, promptly, faithfully, and without question or evasion. Upon the service of an injunction, it is not the province of the party to pronounce upon the right or wrong of the writ, but to obey it. The fact that the writ was improperly or improvidently issued, will not excuse him. This is an inflexible rule of the law. Thus it is said, "with whatever irregularities the proceedings may be affected, or however erroneously the court may have acted in granting the injunction in the first instance, it must be implicitly observed, so long as it remains in existence, and the fact that it has been obtained erroneously affords no justification or excuse for its violation before it has been properly dissolved. The party is not allowed to speculate upon the equity of the bill, or the legality or regularity of the writ, but his simple duty is to obey." 2 Edw. Ch., 188; 5 Col., 326; 9 N. Y., 263; 2 Green. Ch., 436; 4 Paige, 444.

When the fact of the party's guilt in violating an injunction is clearly made to appear, it is a duty the court owes to itself and to the public to punish him at once. But it is the spirit and not the mere letter of the injunction that must be obeyed. *Maginnis* v. *Packhurst*, 3 Green. Ch., 433; High on Inj., 847 *et seq.* Thus, if the phraseology of the writ be inartificial and obscure, but its spirit and intent be man-

ifest, the party will not be excused for its violation. And the law is so jealous of this prerogative of the courts, that even when a party, in violating the writ, acts under the advice of counsel, he will be held to the contempt. If it be not publicly known, the courts should make haste in all proper cases to make it known, that this prerogative must and will be asserted; for upon it depends the protective justice of the courts, and the sound and salutary administration of the law.

The defendant in this case seeks to shield himself behind the obscurity of the decree. He was allowed, upon a refunding bond, to withdraw the fund when paid into court by the complainant, and in default of such payment into court, he was allowed to collect it, and all parties ordered to interplead as to its ownership. The defendant knew this fund was impounded to abide the litigation as to its ownership. The original writ had advised him of this, and had forbidden him to collect it or to in any manner interfere with it. The modified order had expressly required him to give bond for its forthcoming, and though the last clause of said decree did not in terms impose the same inhibition, yet its spirit and intention is so clearly manifest that the defendant could not have misunderstood it. We think the defendant is guilty of the contempt. He knew quite well that he had no right to appropriate this money to the payment of his private debt without a bond to refund it when demanded. The act, under the circumstances, was inexcusable.

Let the decree be affirmed. The defendant will be remanded to the custody of the sheriff of Loudon county until he gives bond for his appearance at the next term of the chancery court of said county, to suffer for the contempt as adjudged, unless, in the meantime, the money be paid into court.