## VANVABRY *v.* STATON.

## (*Nashville.* January 2, 1890.)

1. HABEAS CORPUS. *Appeal in criminal cases.*

Act of 1887, Chapter 157, gives right of appeal to either party from a judgment rendered in a *habeas corpus* case brought by a convict against his keeper to obtain his release from imprisonment inflicted as pun- ishment for a criminal offense by the sentence of a Court; but is not given from judgments in like cases brought by persons held in custody *for trial* upon criminal charges in *pending* cases.

Act construed: Acts 1887, Ch. 157.

Case cited and approved: McClellan *v.* State, 87 Tenn., 52.

Cited as declaratory of common law rule: 3 Sneed, 413; 5 Cold., 326; 16 Lea, 240.

2. SAME. *Writ of error.*

Writ of error lies in *habeas corpus* cases wherever appeal has been given.

3. SAME. *Same. Judgment at chambers.*

Judgment at chambers in *habeas corpus* case may be reviewed, in a proper case, upon appeal or by writ of error.

Code cited: ?4510 (M. & V.); ?3760 (T. & S.).

4. SUPREME COURT. *Mandamus to compel signing of bill of exceptions.*

Supreme Court has undoubted power, in a proper case, to compel, by *mandamus*, the signing of bill of exceptions by the trial Judge.

Cases cited and approved: Miller *v.* Koger, 9 Hum., 236; Sneed *v.* Hall, 3 Cold., 262.

5. SAME. *Same. Particular bill of exceptions.*

But this Court will not compel the signing of a *particular* bill of ex- ceptions, made out and presented by counsel with the request that the trial Judge should sign it without alteration, or refuse to do so, where the trial Judge upon his oath denies its correctness, and the evidence is conflicting upon that point.

Vanvabry *v*. Staton.

*Question reserved:* Will the trial Judge be compelled in any case to sign a *particular* bill of exceptions, the correctness of which he denies upon oath? Probably so in a clear case.

Cases cited: 6 Johns., 279; 3 Peters, 102.

6. WORK-HOUSE LAW. *Illegal rules and regulations. Allowing credit for labor done before conviction.*

A rule or regulation, made either by the County Court or by Work-house Commissioners, is unauthorized and void, whereby it is provided that a convict held in work-house under sentence of a Court to work out fine and costs, shall receive credit for labor voluntarily performed by him before conviction, and while in prison awaiting trial.

Act construed: Acts 1875, Ch. 83 (Code, § 6264 *et seq.* (M. & V.); Acts 1889, Ch. 155.

7. SAME. *Same. Allowing credit for good conduct.*

A like rule or regulation allowing convict credit for good conduct while confined in work-house is unauthorized and void.

8. SAME. *Discharge of convict by order of County Judge. Physician's certificate.*

County Judge's order discharging convict from work-house, before his fine and costs are satisfied, is void unless it is based on the required certificate of a physician that the convict is unable to labor by reason of physical disability.

9. CONTEMPT OF COURT. *Disobedience to Court's orders.*

Disobedience by a party to a valid and subsisting, though erroneous and reversible, judgment is a contempt of Court.

Code cited: § 4881 (M. & V.); § 4106 (T. & S.).

10. SAME. *Judgment valid, when.*

Judgment is valid where Court has jurisdiction of the parties and sub-ject-matter, although erroneous and reversible on appeal.

11. SAME. *Same. Judgment subsisting, when.*

Judgment is not vacated or suspended by prayer for appeal, although the Court erroneously refused to grant it.

12. Supreme Court Practice. *Certiorari. Record.*

In determining validity of judgment of inferior Court upon *certiorari,* this Court confines its inquiry to the question of the lower Court's jurisdiction, and, in the absence of bill of exceptions, looks alone to objections appearing upon the face of the judgment.

Cases cited and approved: State *v.* Galloway, 5 Cold., 327; Warner *v.* State, 13 Lea, 52.

FROM MONTGOMERY.

Appeal from Criminal Court of Montgomery County. C. W. Tyler, J.

Quarles & Daniel and West & Burney for Vanvabry.

Leech & Savage, Smith & Gholson, and House & Merritt, *contra.*

Lurton, J. The questions for decision in this case arise (1) upon a writ of error sued out by Mr. Staton, the Sheriff of Montgomery County, from a judgment of the Hon. C. W. Tyler, Judge, etc., upon a writ of *habeas corpus*, ordering the discharge and release of one Allan Vanvabry, a misdemeanor convict, in his custody as Superintendent of the County Work-house; (2) upon a writ of *certiorari* and *supersedeas* granted by this

Court, upon petition of Staton, to bring into this Court for review a judgment against him of fine and imprisonment for contempt of Court, alleged to have been committed pending the *habeas corpus* proceeding; and, lastly, upon a petition for a writ of *mandamus* to compel Judge Tyler to sign a particular bill of exceptions accompanying the petition, and charged to be a full and true bill of all the proceedings in the *habeas corpus* case, and of the facts constituting the alleged contempt.

The prisoner, Vanvabry, on May 3, 1889, plead guilty upon an indictment charging him with unlawfully carrying a pistol, and on his plea was, by the Criminal Court of Montgomery County, sentenced to pay a fine of fifty dollars and all the costs of his prosecution, "and that he be confined in the jail or work-house at hard labor until he there works out the same according to law." Under this judgment he was committed to the custody of the defendant, Staton.

On May 16 he applied by petition to the Hon. C. W. Tyler, Judge of the Criminal Court of Montgomery County, for a writ of *habeas corpus*, alleging in general terms that he "was illegally restrained of his liberty in the jail of Montgomery County by C. W. Staton, the Jailer," etc. The writ was awarded. Upon this writ such proceedings were had as resulted in a judgment ordering the release and discharge of the relator. From this judgment the Sheriff prayed an appeal to this Court, which was refused. Upon his petition a

22—4 P

writ of error was granted upon the *fiat* of a member of this Court. Inasmuch as a writ of error will only lie when an appeal is authorized, it becomes important to settle at the outset the question as to whether, in a case of this character, an appeal is given by statute. At the common law an appeal would not lie from a judgment in a *habeas corpus* proceeding. *State* v. *Malone*, 3 Sneed, 413; *State* v. *Galloway*, 5 Cold., 326; *State* v. *Taxing District*, 16 Lea, 240.

The same cases decide that neither under the Code or any subsequent statute was an appeal in *habeas corpus* cases granted. Since these decisions the Legislature has provided for an appeal in such cases by Chapter 157 of the Acts of 1887. The title of this Act is as follows: "An Act giving to parties in *habeas corpus* cases the right of appeal to the Supreme Court." The body of this Act, in the broadest terms, gives to either the relator or defendant the right of appeal in any *habeas corpus* case. The only room for any controversy as to the meaning and scope of this Act arises upon a proviso in the following words: "*Provided*, This Act shall not apply to parties held in custody in criminal cases." It is insisted that, under this proviso, there can ·be no appeal where the person is held in custody under a judgment of conviction; that such a person is one "held in custody in criminal cases." Such a construction would sustain the action of the trial Judge in refusing an appeal in this case; but it would, at the same time, emas-

culate the Act by robbing it of all its vigor and force. Relief upon a writ of *habeas corpus* is rarely sought save by persons held in custody either in a pending criminal case or upon a judgment of conviction. We think this proviso applies only to persons held in custody in a "*criminal case*"—that is, in a *pending* case.

The words "criminal cases" apply to one held upon a criminal charge, against whom there is a pending case. In such cases an appeal would only operate to delay a trial and continue the imprisonment. One in custody upon a judgment of conviction is not one held in custody in a "criminal case" within the meaning of the proviso. We reached this conclusion upon full argument; and the opinion of the Court, by Judge Snodgrass, is reported in the case of *McClellan* v. *State*, 87 Tenn., 52. The fact that the judgment discharging the prisoner was rendered by a Judge sitting in chambers did not deprive either party of the right of appeal. By § 3760 of the Code the proceedings in a *habeas. corpus* case, including all the papers and the final order, are required to be returned to the nearest Court of the trial Judge, there to become a record, upon which the Clerk is to issue execution as in other cases.

Upon the petition for a writ of *mandamus* to compel the signing of the bill of exceptions accompanying the petition, an alternative writ was ordered to issue. This writ, as actually issued and served, required the Judge to sign the bill of ex-

ceptions presented by petitioner, or to show cause why he should not do so. The trial Judge has answered this alternative writ by a sworn answer, in which he states that the bill accompanying the petition is not a true or complete bill of exceptions, and that it was presented to him after he had returned the papers in the *habeas corpus* proceeding to the Clerk of the Criminal Court of Montgomery County, by the counsel for Staton, with the request that he should sign it, or refuse, without making corrections or additions; and that, finding it an incomplete bill, he had refused to sign it, and had indorsed the request of Mr. Savage, counsel for Staton, with his own reasons for refusing to sign it, upon the bill and returned it to him. The contention of counsel for Mr. Staton now is that the bill as presented to the Judge is a full and complete bill, and this contention they have supported by several affidavits. The answer of the trial Judge is likewise supported by affidavits filed therewith. The power of this Court, though exclusively a Court of appellate jurisdiction, to compel by *mandamus* the signing of a bill of exceptions by the trial Judge, cannot be now questioned. It is a power inherent in every appellate Court as a necessary incident to its appellate jurisdiction. *Miller* v. *Koger*, 9 Hum., 236; *Sneed* v. *Hull*, 3 Cold., 262.

The question as to whether we may require the signing of a *particular* bill, which the inferior Judge has refused to sign because in his opinion

an untrue or incomplete bill, admits of more doubt, though the intimations of the Court in the opinions above cited seem to support the view that the power exists. We have been able to find but two cases from the Courts of other jurisdictions where this question has been discussed. In *Sykes* v. *Ransom* the power to compel the signing of a particular bill was broadly asserted. 6 Johns., 279. In *Bradstreet* v. *Thomas* the Supreme Court of the United States held that it could not require the Judge to sign a bill which he asserted did not contain the truth. 3 Peters, 102. The usual course is for adversary counsel to agree upon a bill of exceptions and present to the Judge for his signature. Failing to agree, the practice is to submit their differences to him for settlement. Here no submission was proposed. On the contrary, the Judge was requested to sign the bill prepared by counsel for Staton without additions or alterations. No option was given him. He was requested to sign the bill *as prepared, or refuse.* Under these circumstances, he refused to sign the bill. Notwithstanding the request made that he should make no changes, we are all of opinion that it was his duty to have made such changes in the bill as he felt that the truth required, and to have then filed the bill as a true bill. If counsel felt that the bill as signed was not full, or did not recite the proceedings truly, the question could then have been made upon *mandamus* proceeding as to whether he could be made to

correct the bill as signed so as to conform to the facts. Upon such an application, as upon the one now before us, great weight should be attached to the sworn answer of a disinterested trial Judge as to the evidence heard by him and his rulings thereon. Nothing but the clearest proof of mistake, or abuse of power, would justify a superior Court in requiring the Judge of an inferior Court to sign a bill of exceptions which he upon his oath asserts to be incorrect. If it be assumed that we have the power in a clear case, which, however, we do not decide, no such clear case is made out by the affidavits filed in this case. They are conflicting upon many material matters, and upon them we are not disposed to exercise any doubtful power. In the absence of a bill of exceptions we are limited to such errors of law as appear upon the face of the record.

The original petition, and the other pleadings, together with the order of the trial Judge, constitute, as we have already seen, a record. Upon this record certain questions of law arise, which will now be considered. The petition for the writ of *habeas corpus* simply alleges, in indefinite terms, that the petitioner is illegally held in confinement by the defendant, Staton. The return of the defendant sets out these facts: That the defendant is Sheriff of Montgomery County, and that, as such, he is the Jailer and Superintendent of the Work-house; that on March 11, 1889, Allan Vanvabry was arrested upon a warrant issued by a

Magistrate, charging him with the offense of un-
lawfully carrying a pistol; that, in default of bail,
he was committed to the jail of the county to
await the action of the grand jury; that subse-
quently he was indicted, and that on May 3 fol-
lowing he plead guilty, and was sentenced to
pay a fine of fifty dollars and the costs of his
prosecution, "and that he be confined in the jail
or work-house at hard labor until he there work
out the same according to law;" that, in accord-
ance with this judgment, he was committed to
jail, he failing to pay or secure his fine or costs;
that he had not yet satisfied this judgment, and
that he was "holding him to the end that said
judgment may be enforced, and holding him by
virtue of said judgment, as I was directed by the
Court to do." This answer is supported by the
record of the indictment and conviction, same be-
ing made a part of the return. This return was
replied to by the petitioner, his replication setting
out: (1) "That he was arrested more than two
months [since]; that, under the rules long in force
by the Work-house Commissioners, when a prisoner
is arrested he may at once go to work voluntarily
in the work-house, and the time he so works will
be credited upon his sentence; and they also, as
an inducement to good behavior, make allowances
for good time. He did so work, and did obey
the rules of those in authority, and with his good
time, and under the rules above stated, his time
has expired, and he is entitled to his discharge;"

(2) "he is entitled to his discharge on the further ground that the County Judge, by authority of law, regularly discharged him from the work-house by an order of May 11, 1889, and the said Superintendent declines to release him, and illegally detains him in custody."

This plea presents just two issues, and upon these alone the petitioner claimed his right to liberty. The final order of the Judge, indorsed upon the petition and a part of the record, is a full statement of the grounds upon which the order for the discharge and release of the petitioner was rested. From this order it appears:

*First*—"That the Jail Commissioners of Montgomery County have made an order by which any prisoner charged with a *county offense* might go to work as soon as imprisoned, and in that event any subsequent sentence against him should date from the day of his incarceration. They have also made rules allowing liberal deductions from sentences for good behavior."

*Second*—"That it appeared that Vanvabry had been incarcerated since March 11, and that he had voluntarily gone to work before his conviction; and that, under the rule dating his sentence from time of imprisonment and the rule allowing deductions for good behavior, his time had expired."

Assuming the facts to be just as stated, the conclusion of the learned Judge that the time of the prisoner had expired, depends upon the legality of the rules made by the Jail Commissioners.

Section 1 of the work-house Act of 1875 prescribes "that hereafter every person convicted of a misdemeanor who fails to pay or satisfactorily secure the fine and costs adjudged against him or her, shall be *sentenced* to be confined, and shall be confined, in the County work-house *after the term of his or her imprisonment*, if any, has expired, until he work out his fine and costs, including Jailer's fees accruing before and after conviction and down to final discharge."

By Section 4 of same Act it is provided "that every person confined in a work-house for failing to pay or secure his or her fine or costs, or costs only, as the case may be, shall be credited *at the rate of twenty-five cents per day*, in addition to the Jailer's fees; and no person shall be discharged from the work-house before said fine and costs, or costs only, as the case may be, and the costs of all necessary clothing provided, have been fully paid as aforesaid, or the County Judge so orders; * * * *Provided, however*, That no person shall be so discharged except upon certificate of a physician that such person is physically unable to labor."

By Section 16 of the Act the several Quarterly County Courts are given authority "to make and enforce all rules and regulations necessary for the safe-keeping and economic employment of said *convicts.*"

By Chapter 155 of the Acts of 1889 the Quarterly Court of Montgomery County is authorized

to elect three Commissioners, "who, with the County Judge, shall act as Jail and Work-house Commissioners, and shall have complete control and supervision over the institution." The Act then proceeds to specifically define the mode and manner and extent of this control and supervision. They are given power to employ a physician to attend the inmates; to examine and approve all accounts for medicines, clothing, and supplies; to work the inmates upon the County roads, or to place them in other employment; they are required to keep an account of all expenses of the jail and work-house and report to the County Court; and they are authorized to elect a Superintendent, and to suspend or remove such officer for good cause, subject to the approval of the Quarterly Court. These powers do not in the most remote way confer authority to make the rules under which the petitioner claimed his discharge. The work-house Act is the general law of the land, and is and was in force in Montgomery County as in all the other counties of the State. Under the provisions of that Act, as heretofore quoted, no one may be confined in the work-house, or come under the provisions of that Act, unless he has been lawfully *sentenced* to the work-house. It is a place for *convicts* and not for *suspects.* The sentence can only date from its rendition, and no rule of Commissioners can for a moment be recognized by which the voluntary labor of one awaiting trial can be set off against a subsequent sentence. The

work-house Act prescribes that the *convict* shall be allowed twenty-five cents per day for his labor after conviction. There ·is no known statute or principle of law by which the whole system of the criminal law of the State can be, in effect, set aside as to misdemeanants, by rules of the kind under which Vanvabry obtained his discharge. The suggestion that, inasmuch as the costs of misdemeanor convicts are paid by the County, and all fines go to the County, that therefore the County alone is interested and should be suffered to regulate sentences in such cases, is utterly unsound. The offense of the misdemeanant is an offense against the State. The State prosecutes him, and to the violated law of the State he must atone. That the policy of the State has been to impose costs in such cases upon the County in which the conviction was had, cannot affect the question. The State has simply. chosen that method of raising such costs as one more equitable than a general tax upon the whole State for that purpose. The fine and costs imposed in a misdemeanor case are imposed as punishment. If the convict cannot pay or secure them, then he must pay them by his labor in the work-house, at the rate of twenty-five cents per day, in addition to his jail fees. This is the process of the law for the payment of such fines and costs. If by his voluntary labor while held in *jail*, in default of bail, he has earned money, he may of course use this gain in paying the judgment imposed. But

there is no authority for the detention of any one in the work-house who is simply detained because unable to give bail. Such suspects are inmates of the jail and not of the work-house, and are in the custody of the Jailer and not of the keeper of the work-house. The rule making deductions for good behavior is equally unauthorized. No power to make such rule exists anywhere save in the Legislature. That body has not by any kind of construction delegated this power to either the Quarterly Courts or to Commissioners.

The scheme for the management of the inmates of the jail and work-house of Montgomery County may be a very wise and salutary one, but our plain duty is to test its legality by the law of the land, regardless of its utility. Under this test these rules were unauthorized, and the petitioner's time had not therefore expired, he not having either paid or secured his fine or costs, or worked it out under the law of the State as it exists.

But the order of discharge is based not alone upon the ground just stated, the trial Judge adding that, in addition to this, he finds that on May 11 preceding, the County Judge had ordered the discharge of the prisoner, and that he had since been held by the defendant in defiance thereof. The only authority conferred by law upon a County Judge to discharge a work-house convict is found in Section 4 of the work-house Act. This provision only authorizes such action upon the certificate of a physician that the con-

vict is unable, by reason of physical disability, to labor. Such certificate is the essential basis of such an order, and without it there is no authority in the County Judge to discharge the convict. The reply of the petitioner does not claim that the order of the County Judge releasing him was based upon any such certificate. Neither does the order made in the *habeas corpus* case find that there was such a certificate. It is true that this order recites that it was made in accordance with law. This is a conclusion of law, and not the finding of a fact. The County Judge has no general authority to release such prisoners. None are entitled to such clemency save those who are physically unable to labor. The evidence of this fact is, by the statute, *the certificate of a physician.* Armed with such a certificate, a County Judge may exercise this statutory power. His order without such certificate is a nullity. No such certificate appears to have been obtained by the petitioner, and the order of the County Judge was made without authority of law. To support such an order, it must be accompanied by the certificate required by the statute. The defendant was therefore discharging his duty when he refused to recognize an order not accompanied by such certificate, and the learned trial Judge was in error when he decided that the detention of the petitioner after such order was illegal.

Thus, for errors of law appearing upon the face of the order made in the *habeas corpus* proceeding,

the judgment discharging the petitioner must be reversed. The costs in the *mandamus* and *habeas corpus* branches of this case must be taxed to the petitioner, Vanvabry.

We come now to the petition for writs of *certiorari* and *supersedeas* filed by the defendant, Staton, to bring up for review the fine and imprisonment imposed by Judge Tyler for contempt of Court, alleged to have been committed during the trial of the matters involved in the *habeas corpus* case. In reviewing this commitment for contempt upon a writ of *certiorari* we are limited to an inquiry into the jurisdiction of the Court, and, there being no bill of exceptions bringing any of the evidence before us, this inquiry is necessarily limited to that which appears upon the face of the judgment. *State* v. *Galloway*, 5 Cold., 327; *State* v. *Warner*, 13 Lea, 52.

The order made and indorsed upon the papers in the *habeas corpus* case likewise sets out the facts which constituted this contempt and the judgment of fine and imprisonment. From this it appears that when the defendant's (Staton's) prayer for an appeal was refused, that the Court then said to the prisoner that he was at liberty to go; that thereupon the District Attorney, Mr. Savage, who had appeared for the Sheriff, then said to the latter, "I tell you to hold the prisoner;" that the Sheriff replied, "I will;" that the prisoner had risen from his chair, and that the Sheriff then started toward him and seized him.

The Judge then said: "Release the prisoner, sir!"
The Sheriff replied that he was going to do what
Mr. Savage says.    Thereupon the Judge said: "I
fine you fifty dollars, and imprison you in jail ten
days for contempt of Court." It then appears
that the prisoner advanced several steps toward
the door as if to go out, whereupon the Sheriff
followed him and placed handcuffs upon him. The
Court then, upon being called upon by the prisoner's
counsel to prevent such treatment, said: "I fine
you fifty dollars more for this additional insult to
the Court." The handcuffs were removed at the
suggestion of Mr. Savage, and upon the promise
of the prisoner to go with the Sheriff without
trouble. The prisoner was then carried back to
the work-house by the Sheriff and again put in
confinement.

The order of his Honor, the Criminal Judge,
releasing the prisoner, was erroneous, as we have
already decided; but it was not void, being made
in a case within his jurisdiction. Until superseded
or reversed or vacated by appeal, it was a valid
order, which the Sheriff and all other persons were
obliged to respect and obey.

The refusal of the prayer for an appeal was
likewise erroneous, but this did not operate to
vacate the judgment discharging the prisoner. It
is only the granting of an appeal, and compliance
with the terms and conditions upon which it is
granted, which vacates the judgment and deprives
the inferior Court of jurisdiction. The jurisdiction

of Judge Tyler was not lost by his erroneous refusal to allow an appeal. Thus we have the case of an officer of the Court refusing to obey a valid and lawful order of the Court to release and discharge a prisoner, then in the presence of the Court and in the personal custody of the officer ordered to discharge him. The willful refusal of an officer of a Court to obey any lawful order, rule, or command of the Court is by the statutes made a contempt of Court. Code, § 4881. That the Sheriff intended no personal disrespect to the Court is altogether probable. He was guided by the opinion of the District Attorney, who doubtless was of opinion that the prayer for an appeal operated to vacate and annul the order discharging the prisoner. In this he was clearly in error. The order of discharge continued in force until superseded or reversed, and it was the clear duty of the Sheriff to obey and respect it while it continued in force and operation. To have obeyed it would probably have resulted in the escape of his prisoner. But for that no responsibility would have rested upon him. This would have been of insignificant importance compared to the just respect and obedience that every Court is entitled to demand and receive.

The Court having had jurisdiction, and the contempt being one committed in the presence of the Court, the judgment not being void, is not therefore reversible, and must be affirmed.

The costs in this branch of the case will be

paid by petitioner, Staton, and his petition will be dismissed and the *supersedeas* discharged.