# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 9, 2007

## ELAINE M. LARSON, ET AL. v. TOMMY HALLIBURTON

**Appeal from the Circuit Court for Smith County**
**No. 5260     Clara Byrd, Judge**

---

**No. M2004-02435-COA-R3-CV - Filed on April 27, 2007**

---

Grandparents filed petition for contempt against Father for willfully denying Grandparents their court-ordered summer visitation and weekend visitation with grandchildren. Grandparents also requested a mental evaluation and counseling for both Father and the minor children. The trial court found Father in criminal contempt and ordered that the eldest child, B.H., undergo counseling. Father appeals arguing that the trial court erred in (1) holding him in criminal contempt of court and entering sanctions against him; and (2) ordering B.H. to undergo counseling. The judgment of the trial court is vacated in part, affirmed in part and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part, Affirmed in Part, Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Hugh Green, Lebanon, Tennessee, for the appellant, Tommy K. Halliburton.

Debra L. Dishmon, Lebanon, Tennessee, for the appellees, Elaine M. Larson and Larry J. Larson.

## MEMORANDUM OPINION[1]

This case concerns the visitation rights of maternal grandparents and the trial court's decision to order counseling for one of the minor children. On July 21, 2003, the trial court awarded Mr. Larry Larson and Mrs. Elaine Larson (Grandparents) visitation with their deceased daughter's four

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

children, commencing on the second Friday of each month from Friday at 6:00 p.m. until Sunday at 6:00 p.m. The court also awarded Grandparents one week of summer visitation commencing at 6:00 p.m. on the Friday before the July 4th holiday and continuing until the following Friday as well as Christmas visitation each year from December 26 until December 28.

From October 2003 until June 2004, visitation proceeded as ordered by the court. However, according to Mr. Larson, the children's father, Mr. Tommy Halliburton, behaved in an aggressive and abusive manner during the exchange of the children in May 2004 and June 2004, poking Mr. Larson multiple times in the chest and blocking re-entry into his vehicle. Events transpiring during the June 2004 visitation culminated in the instant action; however, the facts of the incident are hotly contested by both parties.

Evidently during the June 2004 visitation, the eldest child, B.H., was ill and asked Grandparents whether he could return home. Grandparents contend that they agreed so long as B.H. could reach Mr. Halliburton in order to assure that B.H. was not left at home alone. Mr. Halliburton, however, alleges that Grandparents refused to allow B.H. to call home and removed the phone from the wall, insisting that B.H. was "faking it." That evening, Mr. Halliburton and his wife arrived at Grandparents' home and demanded to speak with B.H. After a brief conversation, B.H. returned to bed and the Halliburtons left Grandparents' home.

The next morning, Mr. Halliburton called and spoke with B.H. According to Mrs. Larson, B.H. thereafter became enraged and ordered that Mrs. Larson take him home or else he would "kill" her. Mrs. Larson admits to cursing at B.H at that time.[2] The argument continued to escalate and when Mr. Larson entered the room, he grabbed B.H. by the collar and led him to the back door, telling him that it was time for him to return home. B.H. then called Mr. Halliburton and the parties agreed to meet in order to exchange custody of B.H. Mr. Halliburton alleges that during the exchange, Mr. Larson indicated that Grandparents no longer wished to exercise visitation with B.H., however, Mr. Larson denies making any such comment.

On July 12, 2004, Grandparents filed a Petition for Contempt against Mr. Halliburton, alleging that Mr. Halliburton had refused to make the children available for Grandparents' one week of summer visitation and their weekend visitation in July 2004, interfered with Grandparents' relationship with the children, and engaged in inappropriate conduct during prior visitation exchanges. Mr. Halliburton responded to the Petition on July 20, 2004, requesting a revision of the prior visitation order including the addition of supervised visitation, the reappointment of a guardian *ad litem*, a mental evaluation of Mrs. Larson, and asking the court to interview the children.

On July 22, 2004, the trial court interviewed the three eldest children. On July 26, 2004, Grandparents also filed a request for mental evaluation and/or counseling for both Mr. Halliburton and the children. After hearing all the proof in the matter, the trial court determined on August 3,

---

[2] Although the parties disagree as to what Mrs. Larson exactly said to B.H., Mrs. Larson admits to saying, "Goddammit, [B.H.], knock it off. You're scaring the kids. This is a bunch of bullshit. Stop it."

2004, that Mr. Halliburton was in willful contempt of court. The court revised the scheduled visitation in order to compensate Grandparents for their lost time with the children, ordered that the eldest son, B.H., undergo counseling, and suspended visitation with B.H. until further notice. The court's order also provided:

> The matter of an award of attorney's fees in the amount of Two Thousand Eight Hundred Ninety Dollars ($2,890.00), as submitted by Fee Affidavit of Debra L. Dishmon, attorney for Grandparents, shall be reserved. Any further contempt violations by Defendant/Father, Tommy K. Halliburton, shall result in a judgment against Father for said fees as well as the award of additional fees for the necessity of a new contempt proceeding."

Mr. Halliburton appeals, arguing that the trial court erred in (1) holding him in criminal contempt of court and entering sanctions against him; and (2) ordering B.H. to undergo counseling.

## I. CRIMINAL CONTEMPT AND SANCTIONS

"The purpose of criminal contempt sanctions is to vindicate the authority of the court." *Kim v. Laumb*, No. M2005-01736-COA-R3-CV, 2006 WL 2855170, at *4 (Tenn.Ct.App. Oct. 6, 2006). Therefore the determination of whether a party is guilty of contempt and the sanctions entered against a party for contempt rests squarely within the discretion of the trial court. *Sherrod v. Wix*, 849 S.W.2d 780, 786 (Tenn.Ct.App.1992). The decision of the trial court regarding contempt is reviewed under an abuse of discretion standard. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn.1993). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning and which causes an injustice to the complaining party. *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn.2001).

Mr. Halliburton first argues that there was no proof in the record establishing that he disobeyed the court's visitation order and thus, the court erred in holding him in contempt of court. Grandparents alleged in their Petition for Contempt that, "Respondent/Father, Tommy K. Halliburton, has refused to follow this Court's order in that he has refused to permit Grandparents' one week of summer visitation with the minor children, and has refused to permit Grandparents' weekend visitation with the children for the month of July, 2004." In response to Grandparents' Petition, Mr. Halliburton did not deny that he refused Grandparents' their summer visitation or their July 2004 weekend visitation, rather, Mr. Halliburton simply alleged that the visitation was not "in the best interests" of the children and thus presumably a permissible violation of the court's visitation order.

Pursuant to Tenn. Code Ann. § 29-9-102(3), a trial court has the power to hold a party in contempt of court for the willful disobedience or resistance to any lawful order of such court. In *B.M.M. v. P.R.M.*, No. M2002-02242-COA-R3-CV, 2004 WL 1853418, at *1 (Tenn.Ct.App. Aug. 18, 2004), mother refused to allow father his court-ordered visitation with the parties' daughter due to concerns of sexual abuse, and instead, relocated the child to Florida. Despite mother's arguments

that visitation was not in the best interests of the minor child, the court found mother in criminal contempt for interfering with father's visitation stating, "the trial court found that Mother's fears, however real, were without basis; Mother was bound by law to accept and abide by the trial court's ruling, and failed to do so ... The evidence in the record clearly supports the trial court's finding of criminal contempt, including the requisite intent, beyond a reasonable doubt, and the finding of contempt is affirmed." *B.M.M.*, 2004 WL 1853418, at *21. Likewise, the record shows that Mr. Halliburton's concern regarding the safety of the minor children during their visitation with Grandparents was unfounded. And Mr. Halliburton was bound by law to accept and abide by the court ordered visitation despite his fears. The trial court's finding of criminal contempt is therefore affirmed.

Mr. Halliburton also argues that the sanctions entered against him as a result of finding him in contempt were improper because the court cannot rule prospectively against a party. Specifically, Mr. Halliburton contends that the trial court erred in reserving the award of attorney's fees and in ordering that those fees as well as any additional fees incurred by Grandparents in enforcing the visitation award in any future proceeding be entered against Mr. Halliburton in the event that such action is filed. However, it is clear from the trial transcript that although the court found Mr. Halliburton in contempt for violating the court's visitation order, the court chose not to sanction Mr. Halliburton for fear of further alienating B.H. from his grandparents. Said the court:

> [B.H.] loves his dad dearly. He wanted to please his dad, and it bothers him, when he hears the adults say anything about going to jail. And because of that Mr. Halliburton, I would need to send him to jail for blatantly defying my order at this time, because that child will forever believe that his grandparents sent his daddy to jail and that would be the worse thing that anybody could do to a child. So you've got [B.H.] to thank. I wouldn't send his daddy to jail because he defied the court order, although he's technically in contempt of court.

We therefore find that the court's reservation of attorney's fees was not intended, as Mr. Halliburton argues, as a sanction against him for violating the court's visitation order.

However, Grandparents also assert that the trial court erred in reserving the award of attorney's fees, arguing that the court should have assessed such fees against Mr. Halliburton upon finding him in contempt of court. It is well settled in Tennessee that a fifty-dollar fine and ten days' imprisonment are all that a chancery court may impose for criminal contempt. *Weidner v. Friedman*, 151 S.W.56 (Tenn.1912). Tenn. Code Ann. § 29-9-103 establishes the punishment which may be imposed in an action for criminal contempt:

> (a) The punishment for contempt may be by fine or by imprisonment, or both.
> (b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

In *Butler v. Butler*, No. 02A01-9409-CH-00218, 1995 WL 695123, at *2-3 (Tenn.Ct.App. Nov. 21, 1995), the court discussed the trial court's inability to award attorney's fees in an action for criminal contempt, where neither child custody nor child support were at issue. Said the court:

> Plaintiff was unable to adduce any Tennessee law standing for the proposition that it is permissible for a court to exceed the statutorily-defined limits for punishment for criminal contempt by awarding attorney's fees to the prevailing party in a suit for violation of an injunction. Neither are we aware of any such case law.
>
> Appellee might prevail in her quest for attorney's fees if this were a case for civil contempt because there is authority holding that attorney's fees may be awarded in civil contempt proceedings. *TWM Manufacturing Co. v. Dura Corp.,* 722 F.2d 1261 (6th Cir.1983); *In re Crabtree,* 60 B.R. 147 (Bankr.E.D.Tenn.1986); *Kuykendall v. Latham,* 1991 WL 10178 (Tenn.App. Feb. 4, 1991). However, the instant case is one for criminal contempt and the punishment for criminal contempt has been clearly delineated in the above statute.
>
> We agree with Defendant that the award of attorney's fees was improper because it was simply not within the limits established by the statute. Although we sympathize with Plaintiff because she was forced into court by Defendant's actions, the general rule is that absent a statute, contract, or recognized ground of equity, there is no inherent right to have attorneys' fees paid by the opposing party. *State ex rel. Orr v. Thomas,* 585 S.W.2d 606 (Tenn.1979); *Ezell v. Graves,* 807 S.W.2d 700 (Tenn.App.1990). There is no statute in this State requiring the losing party to pay the prevailing party's attorneys fees in a case such as this. To allow these fees without statutory authority would violate public policy. *Owen v. Stanley,* 739 S.W.2d 782, 788 (Tenn.App.1987); *John J. Heirigs Construction Co. v. Exide,* 709 S.W.2d 604, 609 (Tenn.Ct.App.1986).

*Butler*, 1995 WL 695123, at 2-3 (footnote omitted).

We therefore find that the award of any attorney's fees was not permissible in this action because there is no statutory authority providing for such an award in a criminal contempt proceeding where neither the issues of child custody nor child support are raised.

## II. ORDERING B.H. TO UNDERGO COUNSELING

Mr. Halliburton next asserts that the trial court acted outside its authority in ordering B.H. to undergo counseling because there is no such authority stated in the grandparent visitation statutes. We find that the action of the trial court in ordering counseling for B.H. must be vacated. The appeal in this case is a component part of litigation between the parties, which is the subject of a prior appeal. The history of the case reveals:

1. The mother of the four Halliburton children died in April of 2002, shortly after giving birth to the fourth child.
2. Maternal grandparents filed a Petition to Establish visitation pursuant to Tenn. Code Ann. § 36-6-306 and 307.
3. Grandparent visitation was granted by order in June of 2003.
4. Father appealed grandparent visitation of July of 2003. This appeal was docketed in the Court of Appeals as No. M2003-02103-COA-R3-CV.
5. While this appeal was pending, Grandparents filed criminal contempt petition seeking to hold Father in criminal contempt for interference with Grandparent visitation, such petition being filed in the trial court on July 12, 2004.
6. On September 1, 2004, the trial court held Father to be in criminal contempt for interference with Grandparent visitation and ordered the child, B.H., to undergo counseling.
7. On September 28, 2004, Father appealed the contempt finding with such appeal being docketed in this Court as No. M2004-02435-COA-R3-CV.
8. These cases on appeal were not consolidated but have run their separate courses on appeal.

On October 7, 2005, this Court issued its opinion in case No. M2003-02103-COA-R3-CV, which vacated the original order of the trial court granting Grandparent visitation on the basis that the trial court had misapplied the rebuttable presumption established by Tenn. Code Ann § 36-6-306(a)(5). The case was remanded to the trial court for further proceedings.

The basis of the trial court's action in ordering that B.H. undergo counseling was in furtherance of the original order establishing Grandparent visitation. Since the original order has been vacated, prudence requires that the order requiring counseling for B.H. be likewise vacated without prejudice to the rights of any party to seek such counseling in future proceedings in the trial court.

Ordinarily, in view of the previous action of this Court in case No. M2003-02103-COA-R3-CV vacating the original grant of Grandparent visitation, the better course of action would be to vacate the entire proceedings in the case at bar. Such a course of action has been carefully considered by the Court, however, there remains one impediment to such an action. The record clearly shows that Mr. Halliburton violated the Grandparent visitation order of June 2003 well before that order was vacated by this Court on October 7, 2005. The trial court properly held him to be in criminal contempt. Contempt in these conditions has little to do with the ultimate outcome of the merits of the case as has been long established.

The power to punish for contempt is one of the highest prerogatives of a court of justice. Without it, the citizen litigating his rights in court would be without protection or security, and upon its bold and prudent exercise depend the respect, the dignity and efficacy of courts of justice as arbiters of human rights. The mandates of a court must in all cases by obeyed. If wrong be done to the citizen by error of

judgment, there are channels of redress provided by law. If injury be done him from corrupt or malevolent motives by a presiding judge, he is yet not without his remedy. But in all cases the mandates of a court must be obeyed according to the spirit of the judicial order or decree, promptly, faithfully, and without question or evasion. Upon the service of an injunction, it is not the province of the party to pronounce upon the right or wrong of the writ, but to obey it. The fact that the writ was improperly or improvidently issued, will not excuse him. This is an inflexible rule of the law. Thus it is said, "with whatever irregularities the proceedings may be affected, or however erroneously the court may have acted in granting the injunction in the first instance, it must be implicitly observed so long as it remains in existence, and the fact that it has been obtained erroneously affords no justification or excuse for its violation before it has been properly dissolved. The party is not allowed to speculate upon the equity of the bill, or the legality or regularity of the writ, but his simple duty is to obey." 2 Edw. Ch., 188; 5 Col., 326; 9 N.Y., 263; 2 Green. Ch., 436; 4 Paige, 444.

*Blair v. Nelson*, 67 Tenn. 1, 4-5 (1 Heisk. 1974)..

The reason for the rule requiring persons bound by court order to scrupulously adhere to the provisions of the order is set forth by Justice Horace H. Lurton, later Associate Justice of the United States Supreme Court in *Vanvabry v. Staton*, 88 Tenn. 334 (Tenn.1890). In that case, there appeared to be an in-court verbal struggle between the district attorney and the trial judge with the high sheriff of Davidson County caught in the middle. The judge ordered the sheriff to release the prisoner, and the district attorney ordered the sheriff to hold the prisoner, and the sheriff followed the instructions of the district attorney. The sheriff was held in contempt of court, and on appeal, the order of the trial court discharging the prisoner was reversed. In addressing the validity of the finding of contempt, the Tennessee Supreme Court held:

The order of his Honor, the Criminal Judge, releasing the prisoner, was erroneous, as we have already decided; but it was not void, being made in a case within his jurisdiction. Until superseded or reversed or vacated by appeal, it was a valid order, which the Sheriff and all other persons were obliged to respect and obey.

The refusal of the prayer for an appeal was likewise erroneous, but this did not operate to vacate the judgment discharging the prisoner. It is only the granting of an appeal, and compliance with the terms and conditions upon which it is granted, which vacates the judgment and deprives the inferior Court of jurisdiction. The jurisdiction of Judge Tyler was not lost by his erroneous refusal to allow an appeal. Thus we have the case of an officer of the Court refusing to obey a valid and lawful order of the Court to release and discharge a prisoner, then in the presence of the Court and in the personal custody of the officer ordered to discharge him. The willful refusal of an officer of a Court to obey any lawful order, rule, or command of the Court is by the statutes made a contempt of Court. Code, § 4881. That the Sheriff intended no personal disrespect to the Court is altogether probable. He was guided by the opinion of the District Attorney, who doubtless was of opinion that the

prayer for an appeal operated to vacate and annul the order discharging the prisoner. In this he was clearly in error. The order of discharge continued in force until superseded or reversed, and it was the clear duty of the Sheriff to obey and respect it while it continued in force and operation. To have obeyed it would probably have resulted in the escape of his prisoner. But for that no responsibility would have rested upon him. This would have been of insignificant importance compared to the just respect and obedience that every Court is entitled to demand and receive.

*Vanvabry*, 88 Tenn. at 351-52.

### III. CONCLUSION

The judgment of the trial court holding Mr. Halliburton in criminal contempt is affirmed. The order of the trial court relative to attorney's fees is reversed. The judgment of the trial court is in all other respects vacated and the case remanded to the trial court for such further proceedings as may be necessary.

Costs on appeal are adjudged equally with one-half assessed to Appellant and one-half assessed to Appellees.

_____
WILLIAM B. CAIN, JUDGE